376 So.2d 133 (1979)
STATE of Louisiana
v.
Bernard POMES, III.
No. 64522.
Supreme Court of Louisiana.
October 8, 1979.
*134 Ronald P. Herman, Metairie, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Abbott J. Reeves, P. Michael Cullen, Asst. Dist. Attys., for plaintiff-appellee.
BLANCHE, Justice.
Defendant, Bernard Pomes, appeals his conviction in the 24th Judicial District Court of the crime of possession of a controlled dangerous substance, Quaalude (methaqualone), in violation of R.S. 40:967.
The sole evidence presented at trial was the stipulated testimony of two Jefferson Parish Sheriff's Deputies taken at the hearing on the motion to suppress. Because neither deputy could be present at the same time, their testimony was taken separately at different times.
On March 31, 1977, a hit and run accident occurred on Causeway Boulevard in Jefferson Parish. The guilty automobile which left the scene of the accident was described by the occupants of the other car as a white Corvette. The Sheriff's Department was notified of a description of the automobile and a possible license plate number. About an hour later, the driver of the innocent automobile again called the Sheriff's Department and this time, to report that he had discovered the white Corvette was parked in the parking area of the San Antonio Inn on Airline Highway. Deputy Paul Gaillot, who had investigated the hit and run accident, ultimately received this information and headed for the San Antonio Inn to make an investigation. On the way, he radioed for a backup unit and Deputies Russo and Pilgrim responded to the request.
DEPUTY GAILLOT'S TESTIMONY
Deputy Gaillot arrived at the San Antonio Inn and noted that the license number of the white Corvette matched that given by the hit and run victims. He checked with the manager and soon found his way to the room occupied by the driver of the Corvette. Although the backup unit had not yet arrived, Deputy Gaillot went to the room, knocked on the door, and was greeted by defendant. After advising that he was investigating a hit and run accident, he asked that defendant go with him to the parking lot to examine the car. While the defendant was putting on his shoes, Deputy Gaillot proceeded down the stairs of the motel to the parking lot. He did not enter defendant's room, nor did he see the woman who was its other occupant. As Deputy Gaillot was speaking with defendant, Deputy Russo, from the backup car, was mounting the stairs, and the two deputies passed each other on the stairway. After Deputy Gaillot reached the parking lot, defendant came to the car to meet him in order for the deputy to check the car's registration papers. They were joined shortly thereafter by Deputy Russo, who told Deputy Gaillot what he had found in defendant's room. Upon returning to the room, Deputy Gaillot saw the other occupant of the room for the first time. He did not see any evidence being seized from the room.
DEPUTY RUSSO'S TESTIMONY
Deputy Dan Russo's story differs in certain particulars from the story as told by Deputy Gaillot. Deputy Russo testified that he was present at the San Antonio Inn before Deputy Gaillot and that he accompanied Deputy Gaillot to the room and was present when the defendant opened the door. After walking into the room, and while defendant was putting on his shoes, he observed a gun lying on a night table and a woman lying across the bed. After defendant left the room with Deputy Gaillot, who was waiting at the door, he walked over to the table "to secure the gun" and, upon reaching that point, observed a foil-wrapped package on the floor near the night stand. Upon opening the package, he found that it contained a grass-like substance and three tablets; the tablets were wrapped in foil with the name "Quaalude" on the tablet wrappers. Deputy Russo then left the room and proceeded to the parking *135 lot to tell the other deputies about the gun and to warn them to take care in case defendant had another gun. At one point during his investigation, he asked the woman occupant of the motel room to get out of bed, as he feared she might have a weapon concealed beneath her person. After she had arisen from the bed, Deputy Russo discovered a cigarette wrapped in yellow paper and containing the same type substance that was in the foil and which appeared to him to be marijuana.
Defendant's arrest followed.
The case may be disposed of on the defendant's assignments of error pertaining to the illegality of the search and seizure of the non-transparent tin foil package containing the grass-like substance and Quaalude tablets.
The search and seizure of this evidence was made without a warrant as required by the Fourth Amendment of the U.S. Constitution and the Louisiana Constitution, art. 1, § 5 (1974). In such case, the burden is on the state to show that a search is justified by some exception to the warrant requirement. State v. Franklin, 353 So.2d 1315 (La.1977); State v. Matthews, 366 So.2d 1348 (La.1978). The state argues that the plain view exception to the warrant requirement applies to the circumstances in this case. We have set out the following requisites before evidence may be lawfully seized as being in plain view:
(1) That there be a prior justification for police intrusion into a protected area;[1]
(2) That the evidence be discovered inadvertently;
(3) That it be immediately apparent, without close inspection, that the items are evidence or contraband.
These requisites have been stated in State v. Brown, 370 So.2d 525 (La.1979); State v. Bouffanie, 364 So.2d 971 (La.1978); State v. Banks, 363 So.2d 491 (La.1978); and State v. Parker, 355 So.2d 900 (La.1978). We have also required exigent circumstances before objects in plain view could be seized and used as evidence on which to base a conviction. See State v. Doucet, 359 So.2d 1239, 1251 (La.1978).
Pretermitting for the moment the question of whether the deputy sheriff was justified in an intrusion into defendant's motel room[2] we will presume that there was prior justification for the intrusion, without so deciding. The question, then, becomes whether, under the circumstances, the seizure of the Quaalude tablets and grass-like substance was justified.[3]
That the foil-wrapped package was itself in plain view is not disputed. The contents of that package, however, were not in plain view so as to constitute an exception to the need for a search warrant. As noted above, the plain view exception covers only those objects whose nature is readily ascertainable, without opening packages, or any other closed objects. If the thing seized is evidence which is being sought or is clearly contraband, and is in an open area, readily viewable and identifiable by a law enforcement officer who is legitimately in the area being searched, it may be lawfully seized as contraband in plain view. Therefore, unless the foil-wrapped package in itself may be considered as contraband, its seizure did not meet the plain view exception because Deputy Russo did not know until he opened the package what it contained.
"A policeman does not have the right to seize any object in his view in order to *136 examine it and determine if it is or would be evidence in a criminal prosecution. An object must be in open plain view and may be seized only where it is readily apparent that the object is contraband or evidence." State v. Meichel, 290 So.2d 878, 880 (La.1974).
For the above reasons, we find that the evidence should have been excluded and the judgment of the trial court denying the motion to suppress is reversed, and the matter is remanded to the district court for a new trial in accordance with law.
REVERSED AND REMANDED.
SUMMERS, C. J., dissents.
NOTES
[1] There is a justified intrusion of a protected area if there is probable cause to arrest and the presence of exigent circumstances. State v. Rudolph, 369 So.2d 1320 (La.1979).

For what may be considered a protected area, see State v. Abram, 353 So.2d 1019, 1022 (La.1978).
[2] It may be argued that Deputy Russo, in observing the woman occupant of the motel room in bed and the gun on the table, had a right to secure the room for the safety of Deputy Gaillot although he was outside in the parking lot with defendant investigating the hit and run incident.
[3] Assuming that the intrusion into defendant's motel room was justified, there is no question but that the seizure of the weapon, unlike the contents of the foil package, was in plain view.