466 So.2d 752 (1985)
STATE of Louisiana
v.
Gary Lee SMITH, a/k/a Glenn W. Gibson.
Nos. KA 2817, KA 2824.
Court of Appeal of Louisiana, Fourth Circuit.
March 12, 1985.
*754 Philip J. Boudousque', Gretna, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Julia S. Coley, Asst. Dist. Atty., New Orleans, for appellee.
Before GARRISON, BYRNES and CIACCIO, JJ.
CIACCIO, Judge.
Defendant, Glenn Gibson, a/k/a Garylee Smith, was charged, as a co-defendant, with Willie Martin,[1] with possession of methamphetamines and with two counts of possession of an unregistered firearm. R.S. 40:967 and R.S. 40:1785. Gibson was also charged with being a convicted felon in possession of a firearm and with simple possession of marijuana. R.S. 14:95.1 and R.S. 40:966. The defendant, who had entered a plea of not guilty to all charges, withdrew that plea and entered a plea of guilty as charged to all counts, reserving his right to a Crosby appeal. State v. Crosby, 338 So.2d 584 (La., 1976). On the conviction for the charge of possession of methamphetamines and the two charges of possession of an unregistered firearm, the defendant was sentenced as a multiple offender to six years at hard labor without benefit of parole, probation or suspension of sentence. The defendant was also sentenced to six years in the custody of the *755 Department of Corrections, without benefit of parole, probation or suspension of sentence and fined $1500 or a year in Parish Prison for the conviction on the charge of being a felon in possession of a firearm. Additionally, the defendant was sentenced to serve six (6) months in Parish Prison for the conviction on the charge of simple possession of marijuana. This sentence was to run concurrently with any other sentence imposed.
The defendant appeals his convictions and sentences relying upon one assignment of error. We affirm.
On the night of January 31, 1984 at approximately 7:30 p.m. New Orleans Police Officers Bruce Adams and Samuel Lee were assigned to conduct a surveillance operation in a high crime area of the City of New Orleans, located in the 1300 block of South Rampart.
Prior to beginning the operation, the two policemen, one dressed in plain clothes, and the other with his uniform hidden by a jacket, were driving an unmarked red Ford automobile which they parked near Dryades and Thalia Streets, in the vicinity of a local public school.
The officers had obtained general permission from the school's principal to use the school as a base of operations and had in fact used the school on several past surveillance operations. On this night the policemen gained access to the school grounds by entering through a hole in the fence which resulted when the fence was loosened from its post in one area of the enclosed school yard.
Shortly after the one hour surveillance began, the police officers observed a van on the river side of the 1300 block of South Rampart, facing east and parked midway in that block. The van, which had New Mexico license tags, was positioned approximately 20-25 feet away from the policemen. The vehicle was parked with its passenger side adjacent to the sidewalk and its panel doors opened onto the sidewalk. The van was occupied by four men, two black and two white. During their hour surveillance, the two officers observed what they believed to be at least six drug transactions. The individuals involved approached the open doors of the van, a brief conversation would ensure and money would pass hands in return for receipt of a small object. During this time defendant Martin was seated in the driver's seat, with defendant Gibson seated behind him, while Billy Shay was positioned outside the vehicle. The third occupant of the van, James Connolly was seated to the back of the van facing the front.
The two officers were of the opinion that they had "enough suspicion" to believe a crime had been committed, and they approached the van. Policeman Adams approached the open panel doors of the van, while his partner attempted to control the left rear corner of the van from which he could observe the driver's side and rear door.
Officer Adams confronted Billy Shay, who was positioned outside the van. Shay was told of Adams' identity and he was instructed to place his hands on the side of the van. Shay, who had not been frisked, attempted to remove something from his jacket pocket. Officer Adams, fearing that Shay had a weapon, grabbed Shay's hand, and it was found to contain a clear plastic bag with marijuana cigarettes.
Then, without intent to search the van, but with the intent to observe its occupants, Officer Adams approached the van's open doors. Adams identified himself and told the occupants to place their hands where he could see them. He then ordered Gibson and Connolly to exit the van. Just as he was about to tell Martin to exit, the police officer noticed a wooden box next to the driver's seat obstructing Martin's path. Officer Adams, therefore told Martin to place his hands on the steering wheel. The Officer then went to the front of the van and told Martin to exit from the driver's side. The door was opened to reveal Martin making a kicking motion, with his heel swinging to the back. This drew Adams' attention to the floor of the van where he observed a Mack-10 fully automatic machine gun-frame weapon on the floor. *756 Martin and the other three suspects were taken to the side of the van for frisking. Next, Officer Adams advised his partner of the situation and made a call for additional units to aid the arresting officers. Adams thereafter searched each suspect. No weapons were found on the four suspects, however, a large sum of money was found on the person of Willie Martin, although it was not seized at that time.
After the search of the suspects, but before the assistance units arrived, Officer Adams returned to the van to retrieve the machine gun. At this time he observed another large framed gun, later identified as a .45 caliber government automatic pistol. This gun was lying near the machine gun and in the same vicinity was a silencer which fit the .45 caliber pistol. Also in this area was a clear bag with white powder later identified as methamphetamines. All these items were seized by Officer Adams. He also confiscated a Browning 9 mm automatic pistol, an Uzi high powered carbine and ammunition from the van. An open brief case containing syringes with traces of drugs was also found in the van.
Defendant, Glenn Gibson, gave a different account of the facts surrounding the search and seizure of the evidence from the van.
According to Gibson, he and his friend, Willie Martin, arrived in town, on the night in question, from Texas and checked into the Bourbon Street Quality Inn. Gibson and Martin met Connolly and Shay for the first time in the French Quarter and they decided to go in search of some female companions. The four walked to the river where the van was parked. Gibson testified that at that time all of the weapons were in a cedar box, which was padlocked and was positioned between the vehicle's front seats. Upon entering the van, Gibson removed the machine gun from the box and placed it under his leg while he was in the driver's seat. He left the .45 and silencer disassembled inside the camera case in the front of the seat. Since Martin knew the area, Gibson asked him to drive. According to Gibson they pulled to the curb on South Rampart Street in order that Shay could go to the bathroom and at that time the police stuck a gun through the open window of the van and threatened to shoot. This defendant testified that he, at first, thought they were being robbed and he reached for his gun. He backed off, however, when he realized it was the police. According to Gibson, there were no weapons in plain view. He stated that the .45 automatic, its silencer and extra clip were in the closed camera case under the seat. The cedar box, according to Gibson, was positioned behind the driver's seat and it contained the Uzi, a .380 automatic pistol and extra ammunition. He also stated that there was a leather briefcase in the van. It was closed and locked and it contained a smaller leather pouch in which there was an ounce of methamphetamines.
In his only assignment of error, the defendant contends that the trial judge erred when he refused to suppress the evidence in this case. More specifically, he complains that the trial judge erred in his evaluation of credibility, in that he believed the account of the incident given by the arresting officer and rejected that of the defendant, Gibson. Accordingly, the defendant asserts that the testimony of the officers was "contradictory, far fetched and self serving" and thus, the State failed to carry its burden of establishing reasonable cause to justify an investigatory stop or legal grounds to search the van and seize the evidence at issue.
Since the defendant entered a Crosby plea,[2] reserving his rights to contest only the findings on the hearing of the motion to suppress the evidence, the factual questions presented relate only to the validity of the search and seizure. The trial judge evidently resolved the factual dispute in this case in favor of the arresting officer and against defendant, Gibson. The question turned upon credibility. The trier of fact is the arbiter of a witness' credibility. See: State v. Arnaud, 412 *757 So.2d 1013 (La., 1982). The appellate court may not assess the credibility of witnesses. State v. Matthews, 450 So.2d 644 (La., 1984). Our review of the record fails to support the defendant's contention that the arresting officers' testimony lacked credibility. We find no error in the trial court's findings, to which we accord great weight. State v. Keller, 403 So.2d 693 (La., 1981) citing State v. Kent, 371 So.2d 1319 (La., 1979).
The United States and Louisiana Constitutions prohibit unreasonable searches and seizures. U.S. Const. Amend. 4, La. Const. Art. 1 Sec. 5 (1974). Thus all searches without a valid warrant are unreasonable, unless shown to fall within one of the well delineated exceptions to the rule that a search must rest upon a valid warrant. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).
A search incident to a lawful arrest is a recognized exception to the rule. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1983).
Additionally, a warrantless search is valid when it rests upon probable cause and exigent circumstances. Probable cause exists when the facts and circumstances within the arresting officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); State v. Ruffin, 448 So.2d 1274 (La., 1984). Probable cause is to be judged by the probabilities and practical considerations of everyday life on which average men, particularly average police officers, can be expected to act. State v. Ruffin, supra.
Probable cause is not needed when officers wish to stop and interrogate one reasonably suspected of a crime. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). State v. Wade, 390 So.2d 1309 (La., 1980). In order for a policeman to make an investigatory stop, he must have a reasonable suspicion that a person is committing or has committed a crime. C.Cr.P. Art. 215.1. Terry v. Ohio, supra; State v. Wade, supra. The existence of "reasonable cause" is something less than probable cause and it must be determined on a case-by-case basis. State v. Andrishok, 434 So.2d 389 (La., 1983). Following such an investigatory stop, the suspect may be frisked for weapons. Terry v. Ohio, supra; Ybarra v. Illinois, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979).
In this case the officers had reasonable cause to believe that crimes had been committed, in that their hour long surveillance of the four subjects in the van revealed at least six transactions consistent with drug sales. See: State v. Barber, 445 So.2d 463 (La.App., 4th Cir., 1984). Thus, the officers were justified in detaining the subjects for questioning and in searching the subjects for weapons.
While detaining suspect Shay, and before he could be frisked, Shay reached into his pocket to retrieve an object. The arresting officer, fearing the presence of a firearm, grabbed the suspect's hand. The hand contained contraband, (i.e.) a bag of marijuana cigarettes. Since reasonable suspicion existed to detain Shay, the officer was acting lawfully in subduing him. Additionally, any property of which the suspect attempted to dispose during this "stop" was subject to lawful seizure. State v. Belton, 441 So.2d 1195 (La., 1983). Therefore, Officer Adams' seizure of the marijuana was lawful and this fact, coupled with the prior observations of the arresting officers, supplied probable cause for arrest of the defendants.
Officer Adams, in attempting to have Willie Martin exit the van had his attention drawn to the floor of the van near the driver's seat as Martin made a kicking action with his foot. On the floor in plain view he observed a Mack 10 machine gun.
It is well established that evidence which is in "plain view" is subject to *758 a warrantless search and seizure. Coolidge v. New Hampshire, supra. In order for such a search to be valid, three conditions must be present: 1) There must be a prior justification for an intrusion into a protected area, 2) In the course of which evidence is inadvertently discovered, 3) Where it is immediately apparent without close inspection that the items seized are evidence or contraband. Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); Coolidge v. New Hampshire, supra.
Officer Adams first secured the suspect Martin and for safety reasons then returned to the van to retrieve the machine gun. When the officer returned to retrieve the machine gun he observed a .45 caliber government automatic pistol, a silencer and a clear bag with white powder (later found to be methamphetamines) lying on the floor in the same vicinity. The conditions for a seizure of evidence in "plain view" existed. That is, as previously discussed, Officer Adams had prior justification for his intrusion into the van. The weapons and contraband were inadvertently discovered and it was apparent to Officer Adams that these items were evidence and contraband. This warrantless search and seizure was therefore legal.
Additionally, the seizure of these items supplied probable cause and exigent circumstances for a search of the van. That is, there was reason to believe that there existed additional weapons in the van which could cause a threat to the outnumbered arresting officers and also that there was additional contraband in the vehicle.
If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search. United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).
Thus the officers were justified in searching the interior of the vehicle and in seizing the Uzi 9 mm. pistol, the ammunition and open briefcase containing drug paraphernalia and drug traces. This search and seizure was legal.
Finally, a large sum of money was retrieved from defendant, Willie Martin, sometime following his pat down for weapons. Such a seizure was not legal under Terry v. Ohio, supra, as that stop and frisk rule provides for a pat down for weapons. The seizure is lawful, however, under the recent U.S. Supreme Court case of Nix v. Williams, 467 U.S. ___, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).
In the Nix case, supra, at 2511, the court stated: "when, as here, the evidence in question would inevitably have been discovered without reference to the police error as misconduct, there is no nexus sufficient to provide a taint and the evidence is admissible."
In this case the large sum of money was on the person of the defendant and inevitably would have been discovered once he was taken into custody. Accordingly, its seizure some time after the pat down did not constitute an illegal seizure of evidence.
For these reasons, we find that the trial judge did not err in his refusal to suppress the evidence.
This assignment lacks merit.
Accordingly, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The charges against Martin were later nolle prossed by the District Attorney's office.
[2] State v. Crosby, supra.