555 So.2d 495 (1989)
STATE of Louisiana
v.
Edward HALL and Michelle A. Steele. (Two Cases)
STATE of Louisiana
v.
Michelle A. STEELE.
Nos. 88-KA-1282, 88-KA-1354 and 88-KA-1867.
Court of Appeal of Louisiana, Fourth Circuit.
December 14, 1989.
*496 Harry F. Connick, Dist. Atty., Sandra Pettle, and Brian T. Treacy, Asst. Dist. Attys., New Orleans, for plaintiff-appellee State of La.
M. Craig Colwart, Orleans Indigent Defender Program, New Orleans, for defendants-appellants Edward Hall & Michelle Steele.
Before KLEES, LOBRANO, and PLOTKIN, JJ.
KLEES, Judge.
Defendants Michelle Steele and Edward Hall were each charged with one count of possession of cocaine and one count of possession of heroin. After defendants' motion to suppress evidence was denied, a jury trial was held on the possession of heroin charges. Defendants Hall and Steele were found guilty and sentenced to nine years at hard labor and 3 1/3 years at hard labor respectively. Defendants then pled guilty to the possession of cocaine charges, reserving their rights under State v. Crosby, 338 So.2d 584 (La.1976). On those charges, Hall was sentenced to five years at hard labor to be served concurrently with the sentence on the heroin conviction, *497 while Steele was sentenced to two years at hard labor also to be served concurrently with the prior sentence.
Defendants in their sole assignment of error contend that the trial court erred in denying their motion to suppress the evidence. They argue that the seizure of cocaine and heroin was improper as violative of the Fourth Amendment of the U.S. Constitution and Article I Section 5 of the Louisiana Constitution of 1974.
FACTS:
On the night of July 13, 1983, Officer Timothy Bayard of the NOPD Vice Squad was conducting an undercover prostitution investigation in the Tulane Avenue/Carrollton Avenue area. In the course of that investigation he made a prostitution date with Danita Magers, who brought him to room 309 of the Carib Motel at 4025 Tulane Ave. Magers had previously secured a key to the room. Upon entering room 309, Officer Bayard placed Magers under arrest.
As Officer Bayard escorted Magers out of the room and down the walkway outside the rooms, he leaned over the railing to check on his personal vehicle. As he did this, Magers ran toward room 317, the door of which was open. Officer Bayard then gave chase shouting "Police Officer!" Magers entered the room but just as Officer Bayard reached the doorway to room 317, Magers was being pushed out of the room. Officer Bayard's momentum carried him into the doorway where his shoulder and arm were pinned between the door and frame as defendant Hall tried to force the door closed. While trying to disengage his shoulder and arm, Officer Bayard heard defendant Hall say "Get rid of the shit ... flush the shit." Officer Bayard testified that he recognized the statements as ones frequently used to refer to the destruction of narcotics.
About this time Officer Wayne Jusselin arrived on the scene and prevented Magers from escaping. Officer Bayard was able to free himself from the door, and with Officer Jusselin's assistance, kicked in the door and forced it open, knocking Hall to the bed. Officer Bayard immediately went into the bathroom where he discovered the toilet bowl to be refilling from a recent flush.
As Officer Bayard re-entered the main room from the bathroom, Officer Jusselin noticed a nightstand drawer which was open approximately five inches. In that drawer he saw a cellophane bag which contained numerous small foil packets. Officer Jusselin testified that from past experience he recognized the foil packets as common packaging for narcotics. He stepped closer to the open drawer and saw another cellophane bag containing a crystalline white powder which he believed to be cocaine. Officer Jusselin then opened the drawer and seized its contents, which also included a paper towel containing marijuana and several syringes. An additional syringe was found on the floor near defendant Michelle. Steele had been in room 317 during the entire incident. Hall and Steele were then placed under arrest. The foil packets were later found to contain heroin, and the white powder in the second cellophane bag was found to be cocaine.
Generally, a warrantless, non-consensual entry into a protected area to effect an arrest or seizure is constitutionally impermissible. State v. Hathaway, 411 So.2d 1074 (La.1982); State v. Perkins, 451 So.2d 1146 (La.App. 4th Cir.1984). A warrantless search and seizure is presumed unreasonable unless it is justified by one of the narrowly drawn exceptions to the warrant requirement. State v. Pomes, 376 So.2d 133 (La.1979); State v. Smith, 466 So.2d 752 (La.App. 4th Cir.1985). Once a defendant makes an initial showing of a warrantless seizure, the burden shifts to the state to show that the seizure falls into one of the exceptions to the warrant requirement. State v. Pomes, supra; State v. Smith, supra. Police entry into a protected area under "exigent circumstances" is one exception to the warrant requirement. State v. Franklin, 353 So.2d 1315 (La.1977); State v. Perkins, supra.
The defense first argues that the officers made an illegal entry into room 317. The state must justify that entry as one of the exceptions to the warrant requirement. *498 Probable cause and exigent circumstances are required to justify the entry into a protected area. State v. Smith, supra. A rented hotel room is a constitutionally protected area. State v. Peacock, 461 So.2d 1040 (La.1984). "Exigent circumstances" include the escape of a defendant and the destruction of evidence. State v. Welch, 449 So.2d 468 (La. 1984); State v. Hathaway, supra. The first "entry" occurred when officer Bayard was chasing Magers and was pinned between the door and frame of the room. Officer Bayard was in "hot pursuit" of Magers at the time he entered the room. Thus the entry was valid under the "escape of a defendant" exigency. Magers was already under arrest, so it is unnecessary to make a showing of probable cause to arrest her, although probable cause did exist.
After Officer Bayard freed himself from the door, the officers needed a new set of probable cause and exigent circumstances to "re-enter" room 317, since Magers was no longer in the room. Probable cause exists when the facts and circumstances within the officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that an offense has been or is being committed. State v. Smith, supra. Hall heard the officers yelling "Police Officers;" then he pushed Magers out of the room and in his haste to shut the door, pinned officer Bayard between the door and the frame. Those facts combined with the statements Hall made while Officer Bayard was caught in the door gave Officer Bayard probable cause to believe that there was contraband inside the room and that Hall was committing a crime. The statements further revealed that evidence was being destroyed, which is an "exigent circumstance." Thus the officers were justified in gaining entry into room 317.
"Plain view" is not itself an exception to the warrant requirement. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Parker, 355 So.2d 900 (La.1978). Merely because an item is in "plain view" does not give a police officer justification to seize that item. Three requirements must be satisfied for a warrantless seizure to fall under the plain view doctrine:
(1) That there be a prior justification for police intrusion into a protected area;
(2) That the evidence be discovered inadvertently;
(3) That it be immediately apparent, without close inspection, that the items are evidence of contraband.
Coolidge v. New Hampshire, supra; State v. Rodriguez, 396 So.2d 1312 (La.1981); State v. Pomes, supra; State v. Smith, supra.
The first requirement of the plain view doctrine was satisfied because the officers were justified in their intrusion into the hotel room. The second requirement, inadvertent discovery, is not in dispute; the officers did not know about the evidence prior to the entry.
Defendants contend that the third requirement of the plain view doctrine has not been satisfied since the officers did not know, without further inspection, that the evidence was contraband. The three prong test for the plain view doctrine was adopted in Louisiana after Coolidge v. New Hampshire, supra. The United States Supreme Court in Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), explained the third prong of that test. The Court explained that the use of the phrase "immediately apparent" was an "unhappy choice of words." "Immediately apparent" requires only that the officer have probable cause that the items in question are contraband. The Court cited Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) in stating the rule that "the seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity." The facts of Texas v. Brown involved a seizure by a police officer of a green opaque balloon which contained an illicit substance. The defendant was stopped by a police officer at a routine driver's license checkpoint. As the officer shined his flashlight into the vehicle, he noticed the green balloon *499 drop from the driver's hand to the seat. The officer then noticed in the glove box some plastic vials, loose white powder, and an open bag of party balloons. From past experience, the officer knew that party balloons were commonly used to package narcotics. The court held that the seizure was proper since the officer had probable cause to believe that the balloon contained an illicit substance, although he did not know what was in the balloon.
We are unaware of any Louisiana Supreme Court case since Texas v. Brown that discusses this issue. However, we do note that other circuits having the opportunity since 1983 to decide how the plain view doctrine should be construed have held the more flexible standard enunciated in the Brown case to be applicable. See State v. Oliver, 448 So.2d 156 (La.App. 5th Cir. 1984); State v. Knowles, 438 So.2d 648 (La.App. 2d Cir.1983).
We find that Texas v. Brown is controlling in the instant case. Officer Jusselin testified that from his experience he recognized the foil packets as a commonly used method of packaging narcotics. Pursuant to the actions and statements of defendant Hall, and Officer Jusselin's own personal experience, there was probable cause believe that the foil packets and the cellophane bag filled with white powder contained contraband. Thus the third and last prong of the plain view doctrine has been satisfied, and the seizure of the evidence was proper.
We hereby overrule our prior decision in State v. Labranch, 541 So.2d 256 (La.App. 4th Cir.1989) insofar as it is inconsistent with this opinion.[1]
Accordingly, we conclude that the trial judge was correct in denying the defendants' Motion to Suppress the Evidence.
For the reasons stated above, the defendants' convictions and sentences are affirmed.
AFFIRMED
PLOTKIN, J., concurs in part and dissents in part.
PLOTKIN, Judge, concurs in part and dissents in part.
I concur in the majority's affirmation of the defendants' convictions and sentences. The defendants' sole assignment of error, that the motion to suppress the evidence was improperly denied, is meritless. Clearly, in the instant case the evidence was properly seized under the "plain view doctrine". As the majority indicates, the three prong test that must be satisfied for a warrantless seizure to withstand constitutional scrutiny was met by the factual scenario in this case.
I strongly dissent with the majority on the overruling of this court's prior decision in State v. Labranch, 541 So.2d 256 (La. App. 4th Cir.1989). In Labranch, the issue was also whether the warrantless seizure of evidence fell within any of the recognized exceptions to the warrant requirement and was therefore admissible at trial. This court reversed the district court's denial of the motion to suppress, specifically finding that the seizure of the evidence did not fall within the "plain view doctrine."
The majority correctly chronicles the "plain view" doctrine through Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). The three prong test that must be met before evidence discovered in "plain view" is admissible was further clarified in Brown. The Supreme Court indicated that the third prong of the test, that it must be immediately apparent the evidence is contraband, is subject to a probable cause standard. In Brown, the past experience of the officers at identifying a common method of packaging narcotics supplied the probable cause to associate the property with criminal activity. As the majority indicates the Louisiana Supreme Court has not yet adopted the more liberal standard enunciated in Brown, although this standard has been adopted by our brothers on the Second and Fifth Circuits.
Although Texas v. Brown is controlling in the instant case, I do not agree that it *500 would control in Labranch or merit the reversal of this court's ruling in that case. State v. Labranch is clearly distinguishable on the facts from both the case at bar and Texas v. Brown.
A very significant difference exists in the fact scenario in Labranch as it relates to meeting the three prong test of the "plain view" doctrine. In Labranch, the police did not have the prior justification to be in the protected area, which is the threshold issue and the first prong of the "plain view" doctrine test. There did not exist the requisite reasonable suspicion to justify a Terry stop.[1] The policeman testified that he followed Labranch into the grocery store to search him for weapons. Without the minimal justification to stop Labranch which would have triggered a Terry patdown for weapons, the police did not have the "prior justification" to go into the defendant's pocket to retrieve the suspected contraband, whether or not they knew it was contraband.
Additionally, the police did not discover the suspected contraband inadvertently. The record is clear that the police followed Labranch into the store for the purpose of patting him down for weapons after seeing a bulge in his back pocket, without the requisite reasonable suspicion required to perform a Terry pat-down. The police made known to Labranch that they were approaching him in particular and then walked up behind him. Only then did the police allegedly[2] see the foil packets in "plain view." This cannot be characterized as an inadvertent discovery.
Clearly, neither the first or second prongs of the "plain view" doctrine test were present in Labranch. There was no prior justification for police intrusion into the protected area and the evidence was not discovered inadvertently. Whether the third prong of the test was met is immaterial, because of the absence of the first two requirements.
This scenario is easily distinguished from the instant case on the presence of "prior justification". In the case before this court, the police were chasing a fleeing suspect, who had already been placed under arrest, into the motel room. The suspected contraband was in an open drawer in "plain view". Texas v. Brown is also factually different on the issue of prior justification to intrude into the protected area. The police, in Brown, had made a legitimate traffic stop that meets the prior justification test, when they inadvertently discovered the suspected contraband.
The U.S. Supreme Court has reexamined the issue of "plain view" since Texas v. Brown. In Arizona v. Hicks, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), the court reiterated that the initial intrusion that brings the police within "plain view" of the evidence must be supported by a recognized exception to the warrant requirement. In Labranch, an illegal Terry stop could not be used to legitimate subsequent seizure under the "plain view" doctrine.
For the above reasons, although I concur with the majority in the present case, I would not overrule State v. Labranch.
NOTES
[1] In accordance with the internal rules of the court the proposal to overrule the Labranch case was referred to the court en banc and by a majority vote, the court en banc approved this proposal.
[1] Judge Ward dissenting in the original opinion did agree that the facts would not have supported a Terry stop.
[2] At one point in the policeman's testimony, he states that it was after he patted Labranch down that he discovered the bulge was not a weapon but a container that may contain drugs.