986 So.2d 884 (2008)
STATE of Louisiana
v.
Eric A. NEVILLE.
No. 2008-KA-0014.
Court of Appeal of Louisiana, Fourth Circuit.
June 4, 2008.
*885 Laura M. Pavy, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
Keva Landrum-Johnson, District Attorney, Battle Bell IV, Assistant District Attorney, New Orleans, LA, for Appellee.
(Court composed of Judge CHARLES R. JONES, Judge MICHAEL E. KIRBY, Judge ROLAND L. BELSOME).
ROLAND L. BELSOME, Judge.
On May 5, 2005, the defendant, Eric Neville, was charged by bill of information with eight counts of simple burglary of an inhabited dwelling in violation of La. R.S. 14:62.2, two counts of simple burglary in violation of La. R.S. 14:62, two counts of illegal possession of stolen goods in violation of La. R.S. 14:69, and one count of unauthorized entry of an inhabited dwelling in violation of La. R.S. 14:62.3. The defendant pled not guilty to all counts at his arraignment on May 11, 2005. Thereafter, the defendant's competency to stand trial was questioned, and the trial court ordered a lunacy hearing. After a hearing on August 29, 2006, he was found competent to stand trial.
The defendant filed motions to suppress the evidence and identification. A motion hearing was conducted on December 7, 2006, at which time the trial court denied defendant's motions to suppress. On May 7, 2007, the defendant pled guilty to all counts, reserving his rights under State v. Crosby, 338 So.2d 584 (La.1976). On the same date, the trial court sentenced the defendant on all counts. The defendant was sentenced to eight years at hard labor on each count of simple burglary, eight years at hard labor on each count of simple burglary of an inhabited dwelling, six year *886 at hard labor on the charge of unauthorized entry of an inhabited dwelling, and two years at hard labor on each count of illegal possession of stolen goods. All sentences were to be served concurrently and with credit for time served.
On that same day, the State filed a multiple bill of information, alleging the defendant to be a third felony offender. The defendant pled guilty to the multiple bill. The trial court then vacated the sentence on count eleven, one of the simple burglary convictions, and resentenced the defendant on that count as a multiple offender to eight years at hard labor with credit for time served. The sentence was to be served concurrently with all other sentences imposed.
The defendant filed a motion for appeal on June 5, 2007, which was granted the same day.
Vincent Aubert's residence at 5732 Waterford Boulevard was burglarized twice in the early months of 2005. The first time, Mr. Aubert woke in the morning, went into his home office, and discovered that computer equipment had been stolen. The computer equipment that had been taken included three to four computers, two laptops, speakers, and cds. Mr. Aubert called the police who responded and dusted the office for fingerprints.
The second burglary occurred on February 12, 2005 at approximately 4:00 a.m. On this occasion, Mr. Aubert heard the alarm go off on his office door. He walked towards his office and noticed that the door was cracked open. Mr. Aubert pushed the door open and saw the defendant standing in front of him. He grabbed the defendant by the throat and asked the defendant why he was in his house. The defendant said he was looking for someone. Mr. Aubert told the defendant he knew that he was lying, and they started yelling at each other. Mr. Aubert picked up a cordless drill and held it behind his back, pretending it was a gun. He told the defendant to get down and then hit the defendant with the drill. The defendant ran out the office, with Mr. Aubert following him. Mr. Aubert took a machete off his wall and ran after the defendant. He also called to his wife and told her to call the police. Mr. Aubert saw the defendant running towards a black Camaro that was parked in front of his neighbor's house. When the defendant saw Mr. Aubert coming after him with a machete, the defendant continued running past the car.
Mr. Aubert waited outside for the police to arrive, in case the burglar returned for his vehicle. Once the police arrived he gave a statement about the incident and his belief that the burglar fled without his vehicle because Mr. Aubert was chasing him with a machete. One of the police officers walked over to the black Camaro and opened the vehicle's door, which was unlocked. The officer sat in the vehicle and went through the center console and glove compartment. He found a driver's license and showed it to Mr. Aubert, asking him if the person on the license was the person who was in his house. Mr. Aubert responded positively, identifying the defendant on the driver's license. A few weeks later the police called Mr. Aubert and asked him to identify some property. He identified a case of cds, some dvds, and computer equipment.
Detective Steven Phillips, who was investigating several burglaries, was notified that an arrest warrant had been obtained for the defendant, who was a suspect in a burglary on Waterford Boulevard. The basis for the arrest warrant was that the defendant had been confronted by the victim during the burglary, had fled, but had left his vehicle on the scene. The arrest warrant was obtained upon learning the defendant's name after checking the vehicle's *887 registration and locating the defendant's driver's license in the vehicle. In the course of that investigation, the officer discovered that the victim of the burglary had been previously burglarized. The officer located a witness to the previous burglary who lived two houses down from the victim's house. The witness identified the vehicle as the vehicle used in the prior burglary. The witness told the officer that he observed an African-American male standing next to a black Camaro on the day of the first burglary. When the witness would look at the suspect, the suspect would attempt to start the car. When the witness began to approach the suspect, the suspect got into the car and drove off.
Upon hearing the witness' statement, Detective Phillips then obtained a search warrant for the defendant's residence. When the officer searched defendant's residence, numerous items from several burglaries were found, including televisions, computers, computer equipment, digital cameras, and other electronics. The officer went through burglary reports in the same neighborhood and was able to match up some of the property with the owners and victims of the burglaries.

ERRORS PATENT
A review of the record reveals errors in the sentences imposed for defendant's convictions for simple burglary of an inhabited dwelling. Under La. R.S. 14:62.2, a person convicted of simple burglary of an inhabited dwelling must serve one year of his or her sentence without benefit of parole, probation or suspension of sentence. In the present case, the trial court failed to state that one year of each sentence was to be served without benefit of parole, probation or suspension of sentence.
Paragraph A of La. R.S. 15:301.1 provides that in instances where the statutory restrictions are not recited at sentencing, they are included in the sentence given, regardless of whether or not they are imposed by the sentencing court. Furthermore, in State v. Williams, XXXX-XXXX, p. 10 (La.11/28/01), 800 So.2d 790, 799, the Louisiana Supreme Court ruled that paragraph A of the statute self-activates the correction and eliminates the need to remand for a ministerial correction of an illegally lenient sentence, which may result from the failure of the sentencing court to impose punishment in conformity with that provided in the statute. Hence, this Court need take no action to correct the district court's failure to specify that the defendant's sentences on the eight counts of simple burglary of an inhabited dwelling be served without benefit of parole, probation, or suspension of sentence for the first year. The correction is statutorily effected. See State v. Phillips, XXXX-XXXX (La. App. 4 Cir. 7/23/03), 853 So.2d 675. No other patent errors were found.

ASSIGNMENT OF ERROR
The defendant argues that the trial court erred when it denied his motions to suppress evidence and identification. The defendant contends that the warrantless search and seizure of his vehicle and driver's license were illegal, and the subsequent identification is not admissible as it was fruit of the poisonous tree. The State argued that the search and seizure of the vehicle was permissible under several theories, including abandonment, exigent circumstances and inevitable discovery. The trial court found the vehicle to be abandoned property, therefore no expectation of privacy.

DISCUSSION
Warrantless searches and seizures fail to meet constitutional requisites unless they fall within one of the narrow exceptions to the warrant requirement. State v. Edwards, 97-1797, p. 11 (La.7/2/99), 750 So.2d 893, 901. On trial of a motion to suppress, the State has the *888 burden of proving the admissibility of all evidence seized without a warrant. La. C.Cr.P. art. 703(D); State v. Jones, 97-2217, p. 10 (La.App. 4 Cir. 2/24/99), 731 So.2d 389, 395. A trial court's ruling on a motion to suppress the evidence is entitled to great weight, because the court has the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Devore, XXXX-XXXX, p. 6 (La.App. 4 Cir. 12/13/00), 776 So.2d 597, 600-601; State v. Mims, 98-2572 (La.App. 4 Cir. 9/22/99), 752 So.2d 192.
Two requirements must be satisfied before a warrantless seizure of evidence within a movable vehicle can be authorized under this exception: (1) there must be probable cause to believe the vehicle contains contraband or evidence of a crime; and (2) there must be exigent circumstances requiring an immediate warrantless search. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); State v. Lopez, XXXX-XXXX (La.10/30/00), 772 So.2d 90; State v. Tatum, 466 So.2d 29 (La.1985); State v. Barre, 592 So.2d 440 (La.App. 5 Cir.1991). Probable cause means "a fair probability that contraband or evidence of a crime will be found." Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). It must be judged by the probabilities and practical considerations of everyday life on which average people, and particularly average police officers, can be expected to act. State v. Fischer, 97-1133, p. 8 (La.1998), 720 So.2d 1179, 1184; State v. Flagg, 99-1004 (La.App. 5 Cir. 4/25/00), 760 So.2d 522, 528.
In Tatum, the Court reasoned:
For constitutional purposes, there is no difference between on the one hand, seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment and the Louisiana Constitution. Carrol[Carroll] v. U.S., 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); United States v. Ross, [456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982),] supra; State v. Chaney, 423 So.2d 1092 (La.1983).
Furthermore, prior Louisiana jurisprudence has held that a search warrant is not necessary where there is probable cause to search an automobile for contraband or evidence of a crime and there are exigent circumstances requiring an immediate search. State v. Chaney, supra; State v. Guzman, 362 So.2d 744 (La.1978).
Exigent circumstances has been defined as the impracticability of obtaining a warrant due to the possibility that the car could be moved either by its occupants if not arrested, or by someone else. An immediate warrantless search is therefore constitutionally permissible when "the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained." State v. Chaney, supra.

Tatum, 466 So.2d at 31-32.
The court in State v. Parker, 421 So.2d 834 (La.1982), found that the circumstances were sufficient to create an exigency to search without a warrant, and the police officers were justified in conducting an on the scene search of the vehicle. Id. at 842. The police officers had been in a chase with armed robbery suspects who had left the vehicle after driving it into a ditch. Id. The two former occupants of the car were at large, and a crowd had begun to congregate at the scene. The court recognized that the officers had reason to believe that the former occupants had no expectation of privacy in the vehicle *889 given that the occupants ran from the car in the ditch and were suspects in an armed robbery. Id. The court stated that such circumstances suggest that the former occupants had abandoned the vehicle. Id.
In this case, the police officer was informed by the witness that the defendant was in route to the vehicle. Once the defendant realized Mr. Aubert was chasing him he ran past the vehicle and escaped on foot. It is clear that the defendant was aware that he was being pursued and abandoned his vehicle in the course of his escape. Had the vehicle not been searched at that time, the defendant surely could have had the vehicle picked up and driven away from the scene of the crime. Under the specific facts and circumstances of this case, it was reasonable for the police officers to believe that the vehicle may contain evidence of the burglaries, and that if they did not seize the vehicle, the evidence may be lost. We cannot find that the trial court abused its discretion in denying the defendant's motion to suppress.
AFFIRMED.