STATE OF LOUISIANA      *      NO. 2025-KA-0654

VERSUS      *

        **COURT OF APPEAL**

DAMON Z. MCFARLAND JR.      *

        **FOURTH CIRCUIT**

     *

        **STATE OF LOUISIANA**

* * * * * * *

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 555-538, SECTION "E"
Rhonda Goode-Douglas, Judge
* * * * * *
**Judge Dale N. Atkins**
* * * * * *

(Court composed of Judge Rosemary Ledet, Judge Dale N. Atkins, Judge Nakisha Ervin-Knott)

Jason R. Williams, District Attorney
Brad Scott, Chief of Appeals
Peter J. Vesich, Assistant District Attorney
PARISH OF ORLEANS
619 S. White Street
New Orleans, LA 70119

       COUNSEL FOR APPELLEE, State of Louisiana

Rudy W. Gorrell, Jr.
1215 Prytania Street, Suite 223
New Orleans, LA 70130

       COUNSEL FOR DEFENDANT/APPELLANT, Damon Z. McFarland Jr.

           **AFFIRMED**
           **APRIL 6, 2026**

DNA

RML

NEK

This is a criminal case. Appellant is Damon Z. McFarland Jr. ("Mr. McFarland"), and Appellee is the State of Louisiana ("State"). On July 20, 2023, the district court denied Mr. McFarland's "Motion to Suppress . . . Physical Evidence Seized" ("Motion to Suppress"). Subsequently, Mr. McFarland and the State reached a plea agreement. Mr. McFarland now appeals the district court's denial of his Motion to Suppress and asks this Court to remand the matter to the district court under *State v. Crosby*, 338 So.2d 584 (La. 1976). For the following reasons, we find the district court did not abuse its discretion in denying Mr. McFarland's Motion to Suppress, and we affirm his convictions and sentences.

**RELEVANT PROCEDURAL HISTORY**

On September 21, 2022, the State charged Mr. McFarland by bill of information with one count of "us[ing], possess[ing], or hav[ing] under his immediate control, any firearm . . . while unlawfully in the possession of a controlled dangerous substance" in violation of La. R.S. 14:95(E); one count of "knowingly and intentionally possess[ing] with the intent to distribute marijuana, less than 2.5 pounds" in violation of La. R.S. 40:966(B)(2)(a); and one count of "knowingly and intentionally possess[ing] with the intent to distribute a Schedule

1

II Controlled Dangerous Substance, to wit: methamphetamine, less than 28 grams" in violation of La. R.S. 40:967(B)(1)(a). Mr. McFarland pled not guilty to all charges. Subsequently, on December 6, 2022, Mr. McFarland filed his Motion to Suppress, wherein he moved the district court to suppress:

1) All physical evidence seized in connection with this case;

2) All oral or written inculpatory statements made by the defendant;

3) All out-of-court and/or pre-trial identification of the defendant made by State witnesses.

On May 31, 2023, the district court held a hearing on Mr. McFarland's Motion to Suppress.

## Motion to Suppress Hearing

At the hearing on Mr. McFarland's Motion to Suppress, the State called Detective Timothy Jones ("Detective Jones") of the New Orleans Police Department ("NOPD"). Detective Jones identified himself as an officer on the NOPD's "ATF Task Force" and stated he also served on the task force in May 2022. Detective Jones testified that in May 2022, he worked on a case connected with "a homicide shooting outside of Xavier" University of Louisiana ("Xavier") in New Orleans following a graduation ceremony. Clarifying, Detective Jones explained that he did not investigate the homicide itself but became involved in the case when the officers searching for the person(s) responsible for the homicide discovered certain evidence in the course of their investigation.

Detective Jones described the shooting as follows: "there were two groups of kind of feuding people, [who] got into a verbal altercation. It turned violent. Weapons were discharged, and, subsequently, there was a bystander that was struck and killed." Detective Jones answered affirmatively when counsel for the

2

State asked whether Mr. McFarland was part of the incident. Elaborating, Detective Jones stated:

> So I learned about Mr. McFarland [when] the homicide detective [Miles Guerreri ("Detective Guerreri")] who was investigating the incident, seized Mr. McFarland's car from the crime scene, and I had the opportunity to attempt to interview Mr. McFarland. [Detective Guerreri] ended up electing to write a search warrant for Mr. McFarland's car [a 2014 red Infinity four-door sedan] and, subsequently, he found some weapons and contraband in the vehicle.

As explained by Detective Jones, when the officers investigating the homicide discovered a "privately manufactured firearm and narcotics" in Mr. McFarland's vehicle, they "relayed" that information to him.[1] The State then offered the search warrant into evidence, and the district court admitted it.

> The affidavit for the search warrant for Mr. McFarland's vehicle stated:
>
> On Tuesday, May 31, 2022[,] at approximately 11:45 a.m., while working a graduation ceremony detail at Xavier . . . , a[n] [NOPD] detail officer overheard shots fired outside of the graduation ceremony. The officer exited the building and observed several bystanders shot. . . . A . . . female victim was located on scene suffering from an apparent gunshot wound to the head. . . . and was [subsequently] pronounced deceased.
>
> Video surveillance obtained from the area of the crime scene revealed a black male subject standing in the threshold of a red sedan vehicle, later recovered by police. On the footage[,] the subject's hands can not [sic] be seen, however, multiple subjects who were involved in the altercation can be seen running and getting into the 2014 Red Infiniti four door sedan, . . . , registered to Damon McFarland, which is driven [away] by the black male.
>
> The driver of the vehicle, later identified as [Mr.] McFarland is detained by police pending the homicide investigation. Throughout the course of the investigation, detectives learned that a firearm was inside of the red sedan driven by Mr. McFarland.

---

[1] Detective Jones specified that "the scope of [his] investigation [was] only into the possession of the firearm and the narcotics that were located in [Mr. McFarland's] vehicle."

The video surveillance, as described in the above affidavit, also shows Mr. McFarland drive his vehicle away from the scene after the shooting with some of the individuals involved in the altercation inside of the vehicle.

Counsel for the State then asked Detective Jones about the specifics of what the officers located in the vehicle, and he responded that the officers located a firearm, some marijuana, and some pills later identified as methamphetamine. Regarding the gun, Detective Jones identified it as "a privately manufactured firearm," which is "commonly referred to as a 'ghost gun' on the street."[2] According to Detective Jones, after officers took Mr. McFarland into custody, Detective Guirreri also seized his cell phone. Detective Jones testified that he subsequently authored a search warrant for Mr. McFarland's phone. The State also offered that search warrant into evidence. The affidavit for the search warrant for Mr. McFarland's phone detailed the items seized during the search of Mr. McFarland's car, namely the "[g]host gun"; "a digital scale (commonly used to weigh narcotics)"; "one and a half pounds of marijuana in . . . vacuum seal bags"; "clear plastic bags (commonly used to package narcotics)"; "sixty dollars of United States currency  in various denominations"; "a clear plastic bag containing an unknown quantity of pills (believed to be pharmaceutical grade narcotic)"; and "[a] plastic bag containing 49 multicolored pills (believed to be ecstasy)." Further, Detective Jones stated in his affidavit that "[p]redicated on the facts," he believed Mr. "McFarland [was] engaged in trafficking of narcotics at a street level" and, in doing so, "would utilize his mobile device in furtherance of the trade by setting up sales and contacting sources."  In other words, the affidavit explained that, based

---

[2] Detective Jones further explained that the gun "was made from a mold."

4

on officer knowledge of the common way modern drug transactions occur, additional evidence of drug trafficking was likely on Mr. McFarland's cell phone.

Then, the following colloquy occurred:

A    So ultimately, [Mr. McFarland's] phone was defeated[3] and a report was generated. And by going through the content of the phone, there were several instances of correspondence where drug transactions were set up. There were discussions of a type of strain, prices, and then frequently there was [sic] locations set, and there was Cash App money sent.

Q    And in your experience, what did that look like to you?

A    To me, it looked like narcotic trafficking, street level.

Q    Okay. And what did you do with that information after that?

A    So having now obtained the information . . . from the phone and having the firearm as well as the narcotics that was [sic] seized from Mr. McFarland's car, we applied for an arrest warrant.

Thereafter, according to Detective Jones, he located Mr. McFarland at his residence and, based on the totality of the circumstances, obtained a search warrant for that location.

The affidavit Detective Jones authored for the search warrant for Mr. McFarland's residence detailed the items officers seized from Mr. McFarland's car and stated the search of Mr. McFarland's phone "revealed conversations directly after the shooting in which [Mr.] McFarland indicated the firearm and narcotics are his and in his vehicle." Further, Detective Jones' affidavit stated that in a conversation on his phone, Mr. McFarland "attempt[ed] to have his girlfriend . . . retrieve the firearm and narcotics from [his] vehicle, however, at the time of that conversation Mr. McFarland's vehicle had already been seized by police on the scene." Additionally, Detective Jones detailed evidence of drug dealing activity

---

[3] Based on Detective Jones' testimony, "defeated" meant the ATF Task Force was able to get past any passwords or other security systems on Mr. McFarland's phone.

found on Mr. McFarland's phone, namely sending pictures of marijuana to contacts; answering questions about the "strand type, flavor, and price" of the marijuana; and providing meet up locations "that were preceded or followed by Cashapp transactions in small denominations." Detective Jones stated in his affidavit that he believed he and his fellow detectives would not only be able to apprehend Mr. McFarland at his residence, but also search for any outstanding narcotics, firearms, and electronics used by Mr. McFarland in the distribution of narcotics. During his testimony, Detective Jones explained they did in fact discover "additional firearms and magazines, marijuana, and some packing material [associated with drug dealing]." Detective Jones testified this concluded his involvement in the matter.

Counsel for Mr. McFarland then questioned how the investigating officers initially developed Mr. McFarland as a suspect so as to as to justify the search warrant for his vehicle. Detective Jones explained:

> I [do not] think it was clear at the time his vehicle was seized and his phone was seized and he was asked for an interview who the perpetrator [of the shooting incident] was. So I think that was a normal part of the investigation that they were conducting. They were trying to obtain all the facts. They were trying to obtain all of the evidence. There was a firearm used. They were looking for the firearm for ballistic reports, and [those are] common things that are done in homicide reports so . . .

Detective Jones further explained, "I know that [Mr. McFarland] was present in the surveillance footage of the incident, and he was there in his vehicle." Additionally, Detective Jones testified, "I believe, if I recall correctly," that Mr. McFarland "was part of [the] altercation in which this homicide occurred, and he entered and exited his car on more than one occasion," so the officers searched his vehicle "to locate any potential weapons that were used in the incident." Further, Detective Jones

6

explained that the surveillance video showed multiple individuals involved in the shooting incident run to and get inside Mr. McFarland's vehicle, which fled the scene. Detective Jones acknowledged that the investigating officers ultimately determined that Mr. McFarland was not the one who committed the homicide. But, Detective Jones pointed out that at the time those officers searched Mr. McFarland's car, they did not know who had committed the homicide, and they had to investigate their case.

As stated previously, Detective Jones referred to surveillance footage during his testimony. Then, while arguing against Mr. McFarland's Motion to Suppress, counsel for the State also referred to that surveillance footage, noting it "revealed a black male standing outside of a red Infinity sedan" and multiple subjects involved in the shooting incident getting into that vehicle. Counsel for the State argued that this video provided officers with probable cause to seize and search the vehicle to determine if the gun used to commit the homicide was located inside. The district court held Mr. McFarland's Motion to Suppress open and requested to review the video evidence, including the aforementioned surveillance footage and body worn camera footage from on-campus officers who responded to the incident. Of import, the State did not offer, file, or introduce the video evidence into the record during the hearing. And, counsel for Mr. McFarland did not object to the district court viewing the videos.

### Denial of Mr. McFarland's Motion to Suppress

On July 20, 2023, the district court denied Mr. McFarland's Motion to Suppress. In so doing, the district court noted that although officers eventually determined Mr. McFarland was not responsible for the homicide, "they [initially] developed him as a potential suspect" and thus had probable cause to seize his

vehicle and subsequently search it. Mr. McFarland then timely filed a writ application with this Court regarding the district court's denial of his Motion to Suppress. In reviewing the district court's ruling, this Court ordered Mr. McFarland to supplement his writ application with the video exhibits viewed by the district court. Ultimately, this Court denied Mr. McFarland's writ application, ruling the district court did not abuse its discretion in denying Mr. McFarland's Motion to Suppress. The matter then proceeded once again before the district court.

## Plea Agreement

Thereafter, Mr. McFarland and the State reached a plea agreement; and on January 9, 2024, Mr. McFarland entered a guilty plea pursuant to La. C.Cr.P. art. 890.1.[4] Specifically, Mr. McFarland pled guilty to: (1) one count of violating La. R.S. 14:95(E) ("Illegal carrying of weapons"); (2) one count of violating La. R.S. 40:966(B)(2)(a) ("Penalty for distribution or possession with intent to distribute narcotic drugs listed in Schedule I; possession of marijuana, synthetic cannabinoids, and heroin"); and (3) one count of violating La. R.S. 40:967(B)(1)(a) ("Prohibited acts—Schedule II; penalties"). After summarizing the plea agreement for the district court, counsel for Mr. McFarland subsequently explained to the

---

[4] Louisiana Code of Criminal Procedure Article 890.1 is titled "Waiver of minimum mandatory sentences; procedure; exceptions" and provides in pertinent part as follows:

> A. Notwithstanding any other provision of law to the contrary, if a felony or misdemeanor offense specifies a sentence with a minimum term of confinement or a minimum fine, or that the sentence shall be served without benefit of parole, probation, or suspension of sentence, the court, upon conviction, in sentencing the offender shall impose the sentence as provided in the penalty provisions for that offense, unless one of the following occurs:

> (1) The defendant pled guilty pursuant to a negotiated plea agreement with the prosecution and the court, which specifies that the sentence shall be served with benefit of parole, probation, or suspension of sentence or specifies a reduced fine or term of confinement.

8

district court that he was "working with the [District Attorney ("DA")]'s office" to amend the plea agreement "in the next 24 hours" to make it eligible for appeal pursuant to *Crosby*, 338 So.2d 584. The district court advised counsel for Mr. McFarland that if he received approval from the DA's office to make this a *Crosby* plea, then the court would approve this. However, neither the written plea agreement nor the agreement as orally summarized by counsel for Mr. McFarland to the district court made mention of *Crosby*.

The district court judge explained that because the parties brought the plea agreement pursuant to La. C.Cr.P. art. 890.1, she could sentence Mr. McFarland below the mandatory minimum.[5] Then, the district court sentenced Mr. McFarland to five years at the Department of Corrections at hard labor, with five years suspended/deferred, and three years of active probation on Count 1 (violation of La. R.S. 14:95(E)); five years at the Department of Corrections at hard labor, with five years suspended/deferred, and three years of active probation on Count 2 (violation of La. R.S. 40:966(B)(2)(A)); and five years at the Department of Corrections at hard labor, with five years suspended/deferred, and three years of active probation on Count 3 (violation of La. R.S. 40:967(B)(1)(A)). Additionally, the district court ordered that all of the sentences were to run concurrently and with credit for time served.

In the record before this Court are two pleadings Mr. McFarland subsequently filed with the district court. One is a "Notice of Intent to Apply to the

---

[5] In particular, the district court noted the parties' agreement departed from the mandatory minimum sentence for illegal carrying of a weapon while in possession of narcotics in violation of La. R.S. 14:95(E).

In *State v. Kondylis*, the Louisiana Supreme Court explained that La. C.Cr.P. art. 890.1, grants district courts "the authority to depart from the mandatory terms of imprisonment and conditions placed on those sentences otherwise specified by law by agreement of all parties." 2014-0196, pp. 2-3 (La. 10/3/14), 149 So.3d 1210, 1211.

Louisiana Fourth Circuit Court of Appeal" ("Notice of Intent"), and the other is a "Petition and Order for Appeal" ("Petition for Appeal"). Mr. McFarland dated both of these pleadings April 3, 2024, but the district court stamped them as filed in July 2024.

## ASSIGNMENTS OF ERROR

On appeal, Mr. McFarland asserts four assignments of error:

1. The [district] court erred and abused its discretion in denying [Mr. McFarland's] *Motion to Suppress* the evidence illegally obtained from Mr. McFarland's vehicle.

2. The [district] court erred in finding that there was sufficient probable cause for the issuance of a search warrant for Mr. McFarland's vehicle, cell phone, and residence on the basis that the officer(s) lacked sufficient probable cause to obtain search warrants for Mr. McFarland's vehicle and cell phone.

3. The [district] court erred when it considered the contents of the video surveillance, even though the video surveillance was not offered, filed, and introduced into evidence.

4. The [district] court erred in failing to suppress all evidence obtained as a result of the search warrant of Mr. McFarland's vehicle, cell phone, and residence because all the seized evidence constitutes "fruit of the poisonous tree".

Before considering the merits of these assignments of error, we address some preliminary matters and review the matter for errors patent.

## PRELIMINARY MATTERS

### Timeliness of Mr. McFarland's Appeal

Before discussing the merits of Mr. McFarland's appeal, we *ex proprio motu* question the timeliness of Mr. McFarland's appeal. We do so because for an appellate "court to have appellate jurisdiction over a criminal case, the motion for appeal must be timely filed." *State v. Counterman*, 461 So.2d 664, 665 (La. App. 1st Cir. 1984) (emphasis removed) (citations omitted). If the defendant has not

timely filed his motion for appeal, then "there is nothing for an appellate court to review, and the appeal should be dismissed." *Id.*, 461 So.2d at 665-66 (citations omitted). This is because the defendant's "conviction and sentence became final when the defendant failed to appeal timely." *State v. Gray*, 2004-1272, p. 3 (La. App. 5 Cir. 4/26/05), 902 So.2d 1060, 1061 (citing *State v. Counterman*, 475 So.2d 336, 338 (La. 1985)). For the conviction and sentence to be "subject to review under the ordinary appellate process," the defendant must "obtain[] the reinstatement of his right to appeal." *Id.*

Delineating the time period for filing an appeal in criminal matters, La. C.Cr.P. art. 914(B)(1) provides that "[t]he motion for an appeal must be made not later than . . . [t]hirty days after the rendition of the judgment or ruling from which the appeal is taken." Despite the above-cited jurisprudence and the deadline provided in La. C.Cr.P. art. 914(B)(1), this Court has previously considered a defendant's untimely appeal if the State failed to object to the procedural irregularity at the time the defendant sought the appeal. *State v. Laneheart*, 2012-1580, pp. 2-3 (La. App. 4 Cir. 2/26/14), 135 So.3d 1221, 1224-25. So too has the Louisiana Fifth Circuit Court of Appeals. *State v. Williams*, 2011-881, p. 2 (La. App. 5 Cir. 3/27/12), 91 So.3d 442, 443 n.2. As this Court explained in *Laneheart*, "ordering a dismissal to allow the defendant to properly seek reinstatement of appeal rights would only prolong the proceedings without serving any useful purpose." 2012-1580, p. 2, 135 So.3d at 1225 (citing *Williams*, 2011-881, p. 2, 91 So.3d at 443 n.2).

As stated previously, on January 9, 2024, Mr. McFarland pled guilty to all the charges brought by the State, and the district court sentenced him that same day. Then, the district court received two pleadings from Mr. McFarland dated

11

April 3, 2024—his Notice of Intent and Petition for Appeal—whereby he sought review from this Court. Mr. McFarland filed both of these pleadings beyond the thirty-day deadline for seeking an appeal, but the State did not object to the procedural irregularity at the time Mr. McFarland filed the pleadings. Nor does the State object in its brief to this Court. Because a dismissal of Mr. McFarland's appeal to allow him time to properly seek reinstatement of his appeal rights would only prolong this matter without serving any useful purpose, we find this appeal is properly before this Court.

### Whether Mr. McFarland Reserved His Right to Appeal

A second preliminary matter we must consider is whether Mr. McFarland reserved his right to appeal the district court's denial of his Motion to Suppress in light of the plea agreement. The reason we question this is because "[i]n general, a plea of guilty waives nonjurisdictional defects in the proceedings prior to the plea," including insufficiency of the evidence. *State v. Willis*, 52,126, pp. 5-6 (La. App. 2 Cir. 8/15/18), 253 So.3d 915, 919 (first citing *State v. Mack*, 45,552, p. 3 (La. App. 2 Cir. 8/11/10), 46 So.3d 801, 803; and then citing *State v. Whittington*, 46,723, pp. 4-5 (La. App. 2 Cir. 12/14/11), 80 So.3d 723, 725). Nonetheless, "[u]nder *Crosby*, a defendant [ca]n plead[] guilty, but reserve[] his right to appeal alleged pretrial errors." *State v. Gross*, 2009-6, p. 2 (La. App. 3 Cir. 7/8/09), 16 So.3d 551, 554. The purpose "of this type of contingent or conditional plea 'is to permit a fair and efficient review of a central issue when the pretrial ruling on that issue, if erroneous, would mandate reversal of any resulting conviction.'" *Id.* at pp. 2-3, 16 So.3d at 554 (quoting *State v. Cooper*, 43,809, p. 6 (La. App. 2 Cir. 1/14/09), 2 So.3d 1172, 1177-78). The rulings a defendant "typically" preserves with a *Crosby* plea "include denial of a motion to suppress evidence." *State v. Joseph*, 2003-315,

12

p. 2 (La. 5/16/03), 847 So.2d 1196, 1197. *See also State v. Hall*, 2014-0738, p. 1 (La. App. 4 Cir. 2/18/15), 160 So.3d 1060, 1062 n.3. This is precisely what Mr. McFarland seeks from this Court—review of the district court's denial of his Motion to Suppress.

Notably, "[t]he consent of the district attorney to a *Crosby*-plea is not necessary." *State v. Brown*, 2015-1319, p. 2 (La. App. 4 Cir. 4/20/16), 193 So.3d 267, 269 n.1 (citing *State v. Gillis*, 2007-1909, p. 4 (La. App. 1 Cir. 3/26/08), 985 So.2d 745, 747). Rather, in *Crosby*, the Louisiana Supreme Court held, "the [district] court has very great and virtually unreviewable discretion to reject rather than accept a guilty plea conditioned upon reservation of appellate review of pre-plea assignments of non-jurisdictional error." 338 So.2d at 590 (citations omitted). Thus, the district court, has "plenary power" to accept or reject a *Crosby* "plea, regardless of whether the State [agreed or] disagreed with the plea." *Gillis*, 2007-1909, p. 4, 985 So.2d at 747. In other words, a defendant's right "to condition his plea upon the reservation for appellate review of pre-plea errors is subject [solely] to acceptance by the [*district*] *court*" because "[n]othing in *Crosby* or the *Crosby* jurisprudence suggests that there must also be agreement by the State before a trial court can accept a *Crosby* plea." *Id.* Also of note, "a *Crosby* plea, by its very nature, is limited." *Gross*, 2009-6, p. 3, 16 So.3d at 554. If "[a] defendant . . . fails to specify which pre-trial ruling he wishes to reserve for appeal as part of a guilty plea entered under *Crosby,*" the defendant "is not precluded from review altogether, but his appellate review may be limited in scope." *State v. Lewis*, 2010-1022, p. 5 (La. App. 5 Cir. 9/27/11), 75 So.3d 495, 499 (citing *Joseph*, 2003-315, p. 1, 847 So.2d at 1196).

Turning to the matter *sub judice*, our concern is whether Mr. McFarland's plea was a *Crosby* plea as he alleges it was. This concern stems from the fact that neither the written plea agreement nor the oral summary of the plea given to the district court by Mr. McFarland's counsel stated that the plea was a *Crosby* plea. Nevertheless, after counsel for Mr. McFarland summarized the plea agreement, he subsequently informed the district court that he was "working with the DA's office to . . . amend" the plea to be a *Crosby* plea and simultaneously referenced this Court's denial of Mr. McFarland's writ application regarding his Motion to Suppress. In response, the district court stated, "If you get approval from the DA's office to take it under [*Crosby*], the [c]ourt will allow it to be taken under [*Crosby*]." Thus, the district court clearly approved Mr. McFarland's plea being a *Crosby* plea. As the previously-delineated jurisprudence explains, the approval of the DA's office was unnecessary—even though Mr. McFarland's counsel sought it[6]—as long as the district court approved the plea being a *Crosby* plea. Moreover, Mr. McFarland's counsel referred to *Crosby* at the time Mr. McFarland entered his plea, thereby preserving his right to appellate review. *Cf. State v. Smith*, 2009-168, p. 4 (La. App. 5 Cir. 6/23/09), 19 So.3d 509, 510-11 (explaining "[a] defendant may be allowed appellate review if at the time he enters a guilty plea, he expressly reserves his right to appeal a specific adverse ruling in the case" but holding the defendant therein did not preserve his appellate rights under *Crosby* because "[t]here was no mention that the guilty plea was being entered pursuant to *Crosby*

---

[6] In its brief to this Court, counsel for the State explains:

Although Appellant states that his plea was taken under . . . *Crosby*[] . . . and that the State withdrew any objections to a "*Crosby* plea" on March 19, 2024, the undersigned attorney cannot find anything in the record which substantiates that claim. However, the undersigned attorney does believe, after speaking with trial attorneys familiar with the case, that this assertion is accurate.

14

either during the plea colloquy or on the [plea] form"). Further, by referencing this Court's denial of Mr. McFarland's writ application regarding his Motion to Suppress, Mr. McFarland's counsel established the issue for which Mr. McFarland sought to preserve his appellate rights under *Crosby*, i.e., the suppression issue. The district court therefore accepted Mr. McFarland's guilty plea with the preservation of his right to appeal its ruling on his Motion to Suppress. In sum, we agree with Mr. McFarland that his plea was a *Crosby* plea. Having determined that Mr. McFarland's appeal is properly before this Court, we next conduct our errors patent review.

## ERRORS PATENT REVIEW

In accordance with La. C.Cr.P. art. 920, we review all criminal appeals for errors patent. An error patent is one "that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." La. C.Cr.P. art. 920(2). We have reviewed the pleadings and proceedings in this record and find there are no errors patent. Next, we turn to the merits of Mr. McFarland's assignments of error but discuss them out of order.

## DISCUSSION

### Assignment of Error Number Three: Whether the District Court Erred in Considering the Video Evidence When Deciding Mr. McFarland's Motion to Suppress

In his third assignment of error, Mr. McFarland contends the district court erred in considering the surveillance and body-worn camera videos in denying his Motion to Suppress. Mr. McFarland asserts this was an error because the State did not offer the videos into evidence during the hearing on his Motion to Suppress and the district court did not admit them into evidence. The State counters the

district court properly considered the video evidence because Mr. McFarland—or rather, his counsel—did not object to the district court doing so.

We begin our discussion of the merits of Mr. McFarland's appeal by resolving this assignment of error. The reason we do so is because "[a] court may not consider exhibits . . . in the record which were not filed into evidence unless the exhibits were introduced and . . . [deemed] admissible at the trial or hearing." *Landis Constr. Co. v. State*, 2015-1167, p. 3 (La. App. 1 Cir. 2/29/16), 199 So.3d 1, 2 n.1. This is true for both the district court and the appellate court. *State v. Leggett*, 2018-647, p. 2 (La. App. 5 Cir. 3/18/19), 2019 WL 1246911, at *2 (holding the district court "judge improperly considered evidence not properly offered and introduced at the . . . hearing" on the defendant's motion to suppress); *State v. Cobb*, 2013-0431, p. 1 (La. App. 4 Cir. 6/25/14), 161 So.3d 28, 29 (explaining this Court could not consider an investigating officer's affidavit because the district court did not admit it into evidence during the hearing on the defendant's motion to quash). Thus, while Mr. McFarland questions the propriety of the district court having reviewed the video footage, resolution of this assignment of error not only informs the correctness of the district court's ruling but also what we, as an appellate court, may consider in our analysis of Mr. McFarland's other assignments of error.

Despite the foregoing rule, however, Louisiana courts have held that in criminal cases "in which evidence is considered by the [district] court without objection," that "evidence is deemed to be tacitly admitted." *State v. Lloyd*, 48,914 (La. App. 2 Cir. 1/14/15), 161 So.3d 879, 893 (citations omitted). *See also State v. Nargo*, 2015-779, pp. 3-5 (La. App. 3 Cir. 6/1/16), 193 So.3d 1263, 1266-67. Moreover, in *Lloyd*, the Louisiana Second Circuit Court of Appeal observed that

16

defense counsel not only failed to object to the State playing certain recordings at trial but also that "the record [was] clear that defense counsel *wanted* the recording[s] played in open court so the [district] court could hear it." *Lloyd*, 48,914, p. 16, 161 So.3d at 892 (emphasis added). The forgoing jurisprudence implements the so-called "contemporaneous objection" rule established in La. C.Cr.P. art. 841. That rule provides, in pertinent part, that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." La. C.Cr.P. art. 841(A). As this Court recently explained, "[o]ne purpose of this rule is so that 'the [district court] judge can cure the error.'" *State v. Henderson*, 2025-0097, p. 19 (La. App. 4 Cir. 12/30/25), ___ So.3d ___, ___, 2025 WL 3763924, at *10 (quoting *State v. Lanclos*, 2007-0082, p. 6 (La. 4/8/08), 980 So.2d 643, 648). The rule thus "prevent[s] the defendant from gambling for a favorable verdict and then resorting to appeal on errors that might easily have been corrected by an objection." *State v. Rickmon*, 2023-0048, p. 12 (La. App. 4 Cir. 8/30/23), 372 So.3d 60, 70 (citing *State v. Vernon*, 2016-0692, p. 8 (La. App. 4 Cir. 12/21/16), 207 So.3d 525, 529).

In the matter *sub judice*, when the district court judge stated she wanted to view the videos prior to ruling on Mr. McFarland's Motion to Suppress and asked the State to provide her with copies of same, Mr. McFarland's counsel did not contemporaneously object. Further, Mr. McFarland's counsel actually argued before the district court that the videos served as a basis to grant Mr. McFarland's Motion to Suppress. Based on La. C.Cr.P. art. 841(A), *Lloyd*, and *Nargo*, we deem the videos "tacitly admitted" into evidence. As such, the district court did not err in

17

considering the videos, and we can consider them in our resolution of Mr. McFarland's remaining assignments of error.[7]

### Assignment of Error Number One: Whether the District Court Erred and Abused Its Discretion in Denying Mr. McFarland's Motion to Suppress with Respect to the Evidence Obtained from His Vehicle

In his first assignment of error, Mr. McFarland asserts the district "court erred and abused its discretion in denying [his Motion to Suppress] the evidence illegally obtained from [his] vehicle." Mr. McFarland contends the officers seized the evidence "in violation of the United States and Louisiana Constitution[s]" because they "lacked sufficient probable cause to seize and tow his vehicle" without a warrant in the first place. As the State accurately summarizes this assignment of error in its brief, Mr. McFarland "contest[s] all evidence seized pursuant to . . . [the subsequent search] warrants[8] on the theory that the . . . warrants were tainted by the initial warrantless seizure[] of [Mr. McFarland's] car . . . .." The State counters that Mr. McFarland's "arguments fail here because . . . [Detective] Jones explained the exigent circumstances" surrounding the warrantless seizure of Mr. McFarland's vehicle. Further, the State argues that even if this Court were to find the situation did not present "exigent circumstances, the warrantless seizure of [Mr. McFarland]'s car and phone did not affect any privacy interest since a search was only conducted after police officers obtained warrants to search [his] property."

---

[7] We note the videos were not originally part of the appellate record for this case. However, in November 2025, this Court issued an Order, which advised that the "Court will utilize the entire record, including the video recordings previously submitted in [Mr. McFarland's] writ application . . . in order to render a decision in the instant appeal, pursuant to Uniform Rules-Courts of Appeal, 2-1.14." Rule 2-1.14 of the Uniform Rules of the Courts of Appeal provides that "[a]ny record lodged in the Court of Appeal may, with leave of court, be used, without necessity of duplication, in any other appeal or writ application."

[8] As delineated earlier in the Opinion, after obtaining search warrants, officers searched Mr. McFarland's vehicle, phone, and residence.

### Standard of Review

We begin our analysis with the relevant standard of review. As this Court recently explained, "a motion to suppress presents a mixed question of law and fact." *State v. Brown*, 2025-0440, p. 7 (La. App. 4 Cir. 9/10/25), 424 So.3d 150, 154-55 (quoting *State v. Hill*, 2025-0316, pp. 10-11 (La. App. 4 Cir. 8/19/25), 418 So.3d 1119, 1127). In considering the district court's ruling on a motion to suppress, "the appellate court reviews the underlying facts for an abuse of discretion but reviews conclusions to be drawn from those facts *de novo*." *Id.* at p. 7, 424 So.3d at 155 (quoting *Hill*, 2025-0316, p. 11, 424 So.3d at 1127). The reason an appellate court reviews the facts for an abuse of discretion and affords great weight to the district court's factual findings is because "the district court ha[d] the opportunity to observe the witnesses and weigh the credibility of their testimony." *Id.* at p. 7, 424 So.3d at 154 (internal quotation marks omitted) (quoting *Hill*, 2025-0316, p. 10, 418 So.3d at 1127). When no facts are in dispute, "the appellate court need only consider whether the district court came to the proper legal determination under the undisputed facts." *Id.* at p. 7, 424 So.3d at 155 (quoting *Hill*, 2025-0316, p. 11, 418 So.3d at 1127). In the instant matter, there are no underlying facts in dispute. Accordingly, we will conduct a *de novo* review of the district court's ruling.

### Warrantless Seizures

As Mr. McFarland correctly states in his brief, both the United States and Louisiana Constitutions protect from unreasonable searches and seizures. The Fourth Amendment to the United States Constitution, which is titled "Searches and Seizures; Warrants[,]" provides that people have the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures"

and that this right "shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Similarly, La. Const. art. 1, § 5, states:

> Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.

As this Court has held, "a warrantless . . . seizure is presumed to be unreasonable" in light of the above constitutional provisions. *State v. Debose*, 2024-0217, p. 12 (La. App. 4 Cir. 6/13/24), 390 So.3d 971, 980 (quoting *State v. Willis*, 2022-0452, p. 13 (La. App. 4 Cir. 9/1/22), 348 So.3d 167, 175).

When a defendant believes that officers unconstitutionally obtained evidence against him, he may file a motion to suppress pursuant to La. C.Cr.P. art. 703.[9] *State v. Randolph*, 2023-0690, p. 11 (La. App. 4 Cir. 11/20/23), 377 So.3d 825, 833. If the "defendant makes an initial showing of a warrantless seizure, the burden shifts to the [S]tate to show that the seizure falls into one of the exceptions to the warrant requirement." *State v. Hall*, 555 So.2d 495, 497 (La. App. 4th Cir. 1989) (first citing *State v. Pomes*, 376 So.2d 133, 135 (La. 1979); and then citing *State v. Smith*, 466 So.2d 752, 757 (La. App. 4th Cir. 1985)). *See also State v. Washington*, 591 So.2d 1388, 1389 (La. App. 4th Cir. 1991) (citing *Pomes*, 376 So.2d at 135).

---

[9] Louisiana Code of Criminal Procedure Article 703(A) provides that "[a] defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained."

### *The Exigent Circumstances Exception*

In relevant part, "exigent circumstances" are one such exception. *Hall*, 555 So.2d at 497-98 (first citing *State v. Franklin*, 353 So.2d 1315, 1319 (La. 1977); and then citing *State v. Perkins*, 451 So.2d 1146, 1149 (La. App. 4th Cir. 1984)). The Louisiana Supreme Court has reasoned the exception exists because in certain "situations, the need for effective law enforcement trumps the right of privacy and the requirement of a search warrant, thereby excusing an otherwise unconstitutional intrusion." *State v. Warren*, 2005-2248, p. 11 (La. 2/22/07), 949 So.2d 1215, 1224-25 (citing *Warden v. Hayden*, 387 U.S. 294, 298-99, 87 S.Ct. 1642, 1645-46, 18 L.Ed.2d 782 (1967)). The exigent circumstances exception "arise[s] from the need to prevent [an] offender's escape," particularly if "the car is movable" and "the occupants [of the car] are alerted" to the situation. *State v. Ledford*, 40,318, p. 6 (La. App. 2 Cir. 10/28/05), 914 So.2d 1168, 1173 (citations omitted); *State v. Wright*, 562 So.2d 1192, 1195 (La. App. 5th Cir. 1990) (citation omitted). *See also State v. Howard*, 2012-1117, p. 13 (La. App. 4 Cir. 7/3/13), 120 So.3d 831, 840 (listing an exigent circumstance as one when "possessors of the contraband were aware that the police were on their trail"). Further, the exigent circumstances exception arises when there exists "the need . . . to minimize the possibility of a violent confrontation which could cause injury to the officers and the public." *Ledford*, 40,318, p. 6, 914 So.2d at 1173 (citations omitted). To this end, "[t]he safety of others is a particular concern when police respond to a report of a crime in progress, and, in such a situation," the officers "should be afforded an extra degree of deference." *Warren*, 2005-2248, p. 9, 949 So.2d at 1224 (quoting *Reardon v. Wroan*, 811 F.2d 1025, 1029 (7th Cir. 1987)). Additionally, the exigent circumstances exception arises if there exists a need to "preserve evidence from

destruction or concealment." *Ledford*, 40,318, pp. 6-7, 914 So.2d at 1173. In this regard, the reasoning behind the exception is that "the car's contents may never be found again if a warrant must be obtained" before seizure of the car. *Wright*, 562 So.2d at 1195 (citation omitted).

The Louisiana Supreme Court has explained that "[i]n determining whether sufficient exigent circumstances exist to justify the warrantless entry and search or seizure, the court must consider the totality of the circumstances and the inherent necessities of the situation at the time." *Warren*, 2005-2248, p. 10, 949 So.2d at 1224 (internal quotation marks omitted) (quoting *U.S. v. Rohrig*, 98 F.3d 1506, 1511 (6th Cir. 1996)). In other words, "the exigent circumstances must be known to the officers" at the time of the warrantless seizure, not "based on evidence discovered during [a subsequent] search." *Id.* (citations omitted)

As this Court has explained, for this exception to apply, the situation must not only present exigent circumstances, but also "there must be probable cause to believe the vehicle contains contraband or evidence of a crime." *State v. Neville*, 2008-0014, p. 6 (La. App. 4 Cir. 6/4/08), 986 So.2d 884, 888 (citations omitted). In this scenario, "[p]robable cause means 'a fair probability that contraband or evidence of a crime will be found.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)). It is "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *Warren*, 2005-2248, p. 10, 949 So.2d at 1224 (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). The probable cause determination "must be judged by the probabilities and practical considerations of everyday life on which average people, and particularly average police officers, can be expected to act." *Neville*, 2008-0014, p. 6, 986 So.2d at 888 (first citing *State v. Fischer*, 1997-1133,

p. 8 (La.1998), 720 So.2d 1179, 1184; and then citing *State v. Flagg*, 1999-1004, p. 10 (La. App. 5 Cir. 4/25/00), 760 So.2d 522, 528). Further, the Louisiana Supreme Court has instructed that the probable cause "determination must be made from the totality of the circumstances, based on the objective facts known to the officer at the time." *Warren*, 2005-2248, p. 10, 949 So.2d at 1224 (citing *United States v. Ferguson*, 8 F.3d 385, 391-92 (6th Cir.1993)).

*Analysis*

In this matter, the record establishes that officers seized Mr. McFarland's vehicle without first obtaining a warrant, so the State bore the burden of proving an exception to the warrant requirement. We find, as the State asserts in its brief, that the exigent circumstances exception applied because the situation presented exigent circumstances and the officers had probable cause to seize Mr. McFarland's vehicle without waiting for a warrant. The officers were investigating an active crime scene involving gun violence after an altercation arose between two groups of people and an innocent bystander died. As Detective Jones testified, Mr. McFarland "was present in the surveillance footage of the incident . . . in his vehicle." More particularly, Detective Jones stated, "Mr. McFarland was part of this altercation in which this homicide occurred, and he entered and exited his car on more than one occasion." Likewise, Detective Jones stated that "individuals from [the shooting] incident were seen entering [Mr. McFarland's] car and fleeing." The video surveillance confirms this and shows Mr. McFarland drive his vehicle and the individuals away from the scene. As Detective Jones testified, the investigating officers "were trying to obtain all of the evidence" and "looking for the firearm[s]" used in the shooting. The exigency stemmed from the mobility of Mr. McFarland's vehicle; the occupants' knowledge of the shooting and likely

ensuing investigation; the necessity of preventing Mr. McFarland and any individuals potentially responsible for the homicide from escaping; and the officers' need to protect potential evidence pertinent to the shooting from destruction or concealment. Further, because a shooting had just occurred, the officers needed to secure the scene to prevent harm to themselves and members of the public. Mr. McFarland's first assignment of error is without merit.

## Assignment of Error Number Two: Whether the District Court Erred in Finding That There was Sufficient Probable Cause for the Issuance of the Search Warrants

In his second assignment of error, Mr. McFarland argues the district "court erred in finding . . . sufficient probable cause for the issuance of [the] search warrant[s]" because "the officer(s) lacked sufficient probable cause to obtain search warrants for Mr. McFarland's vehicle, cell phone, and residence." Further, Mr. McFarland alleges "the officer(s) and detective mislead [sic] the Magistrate Commissioner, by providing information . . . regarding the unrelated homicide/shooting incident in an effort to successfully obtain a search warrant for Mr. McFarland's vehicle, cell phone, and residence." Essentially, Mr. McFarland argues the district court should have granted his Motion to Suppress because the warrants were not based on probable cause. The State counters that Mr. McFarland "failed to carry his burden to prove that the warrants were invalid," noting he "did not call any witnesses or present any evidence in any fashion that showed that the warrant was based on material misrepresentations or omissions."

### *Principles Applicable to a Motion to Suppress Evidence Obtained Pursuant to a Search Warrant*

As stated previously, in considering a district court's ruling on a motion to suppress, we "review[] the underlying facts for an abuse of discretion but review[]

24

conclusions to be drawn from those facts *de novo*." *Brown*, 2025-0440, p. 7, 424 So.3d at 155 (quoting *Hill*, 2025-0316, p. 11, 418 So.3d at 1127). As we also explained in the prior section, the initial burden of proof on a motion to suppress rests with the defendant. La. C.Cr.P. art. 703(D). This is true when a defendant challenges a search warrant via a motion to suppress. That is, if officers seized the evidence that is the subject of the motion to suppress "pursuant to a search warrant, the burden is on the defendant to show that the warrant lacked probable cause." *State v. Lang*, 2019-0586, p. 5 (La. App. 4 Cir. 7/22/19), 276 So.3d 558, 562 (citing La. C.Cr.P. at. 703(D)).

### *Probable Cause Requirement*

"[T]he admissibility of evidence" depends "upon the validity of the search." *Id.* (citing *State v. Bradford*, 1998-1428, p. 4 (La. App. 4 Cir. 12/9/98), 729 So.2d 1049, 1051). For a search pursuant to a warrant to be valid, the warrant must be supported by probable cause. This is because La. C.Cr.P. art. 162 states that "[a] search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant." Probable cause:

> exists when the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched. This determination rests on whether the totality of the circumstances forms a substantial basis for a finding of probable cause. Thus, [p]robable cause for the issuance of a search warrant does not involve certainties of proof beyond a reasonable doubt, or even a *prima facie* showing, but rather involves probabilities of human behavior as understood by persons trained in law enforcement and based on the totality of the circumstances. The Louisiana Supreme Court has explained that when a magistrate has already found probable cause in an affidavit, reviewing courts should interpret the affidavit in a realistic and common sense fashion, aware that it is

normally prepared by non-lawyer police officers in the midst and haste of a criminal investigation.

*Randolph*, pp. 12-13, 377 So.3d at 834 (internal quotation marks omitted) (internal citations omitted) (alteration in original).

Further, probable cause needs to "be within the 'four corners' of the affidavit." *Randolph*, p. 14, 377 So.3d at 834 (quoting *State v. Casey*, 1999-0023, p. 4 (La. 1/26/00), 775 So.2d 1022, 1028). The reasoning behind this requirement is that "the judge, not the affiant, . . . must be satisfied as to the existence of probable cause." *Id.* (quoting *State v. Green*, 2002-1022, p. 8 (La. 12/4/02), 831 So.2d 962, 969). Accordingly, the affiant must give the magistrate judge sufficient "information to make an independent judgment that probable cause exists" rather than leaving the magistrate judge to ratify "the bare conclusions of others." *Id.* The Louisiana Supreme Court advises courts to simultaneously follow these guidelines and "[to] strive to uphold warrants to encourage their use by police officers." *Id.* at p. 14, 377 So.3d at 834.

### *Continuing Nexus Requirement*

For a search pursuant to a warrant to be valid, the warrant also needs to "establish a probable continuing nexus between the place sought to be searched and the property sought to be seized." *Id.* at p. 13, 377 So.3d at 834 (quoting *Casey*, 1999-0023, p. 4, 775 So.2d at 1028). This is because La. C.Cr.P. art. 162(C) requires the "search warrant [to] particularly describe the person or place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search or seizure." The continuing nexus requirement is met when one can logically infer the evidence sought would be found in the place(s) officers seeks to

search. *Randolph*, 2023-0690, p. 14, 377 So.3d at 834 (quoting *U.S. v. Edwards*, 124 F.Supp.2d 387, 421 (M.D. La. 2000)).

***Presumption of Validity***

Courts are to presume the validity of an affidavit supporting a search warrant; and if a defendant alleges the representations in the affidavit are false, then the defendant has the burden of proving this. *State v. Williams*, 2020-46, p. 51 (La. App. 5 Cir. 12/30/20), 308 So.3d 791, 830 (first citing *State v. Shiell*, 2016-447, p. 4 (La. App. 5 Cir. 12/7/16), 204 So.3d 1213, 1217; and then citing *State v. Dee*, 2009-712, p. 11 (La. App. 5 Cir. 2/23/10), 34 So.3d 892, 899). To meet his burden of proof, the defendant must demonstrate "by a preponderance of the evidence that the affidavit contains intentional misrepresentations." *Id.* (citing *Shiell*, 2016-447, p. 4, 204 So.3d at 1217). If the defendant meets this burden of proof, the reviewing court will invalidate the warrant and suppress the items seized because "[a] material and intentional misrepresentation made in an affidavit presented to a magistrate constitutes a fraud upon the court." *Id.*

***Analysis***

With these principles in mind, we consider their application to the matter *sub judice*. The affidavit submitted in support of a search warrant for Mr. McFarland's vehicle explained that (1) an NOPD detail officer heard multiple shots fired at Xavier and then observed several people who had been shot; (2) video surveillance of the crime scene revealed [Mr. McFarland] standing in the threshold of a vehicle, with multiple individuals involved in the shooting incident running toward and getting inside said vehicle subsequently driven away by Mr. McFarland; and (3) officers learned during the investigation of the shooting that the vehicle contained a firearm. Under the totality of the circumstances, the magistrate correctly found

probable cause to issue the search warrant for Mr. McFarland's vehicle and a continuing nexus between the items sought and the location. The affiant explained an offense occurred (the shooting) and demonstrated that evidence of same (particularly the firearm(s) used in the shooting) might be found in Mr. McFarland's vehicle in light of his presence at the scene and individuals involved in the altercation entering his vehicle immediately after the shooting. The information was not conclusory in nature but based on officer observation and corroborated by surveillance evidence. Accordingly, the magistrate did not err in finding probable cause existed to issue the search warrant for Mr. McFarland's vehicle. Further, while Mr. McFarland contends the officers misled the magistrate by referring to the "unrelated homicide/shooting incident," Mr. McFarland offered no evidence to meet his burden of proving this. For example, Mr. McFarland offered nothing to demonstrate that officers knew at the time they sought the search warrant that he was not involved in the shooting incident and that no evidence of same would be in his vehicle.

Subsequently, after the search of Mr. McFarland's vehicle yielded evidence of multiple crimes, including illegal possession of firearms and possession of illegal drugs and drug paraphernalia, the investigating officers sought another search warrant for Mr. McFarland's cell phone to obtain information related to suspected drug dealing activity. Detective Jones' affidavit for the search warrant for Mr. McFarland's cell phone established that, pursuant to a lawful search of Mr. McFarland's vehicle, officers discovered a handgun with an extended magazine and no serial number (a privately made firearm commonly known as a "ghost gun"); 1.5 pounds of marijuana; pills (believed to be illicit drugs); and paraphernalia related to drug dealing, such as a digital scale and packaging

material. The affidavit explained that, based on officer knowledge of the common way modern drug transactions occur, additional evidence of drug trafficking was likely on Mr. McFarland's cell phone. The foregoing established probable cause and a continuing nexus sought between the location of the search (Mr. McFarland's cell phone) and the information sought (drug dealing activity).

Then, Detective Jones authored the affidavit for the search warrant for Mr. McFarland's residence. Therein, Detective Jones explained what officers had already seized from Mr. McFarland's car and what he and his fellow detectives had gleaned from Mr. McFarland's phone. In this latter regard, Detective Jones explained Mr. McFarland admitted in cell phone conversations that he owned the ghost gun and narcotics seized by officers from his vehicle and had attempted to hide this evidence from police. Further, Detective Jones' affidavit detailed evidence of drug dealing activity discovered by detectives on Mr. McFarland's phone. Detective Jones explained they were likely to discover additional narcotics, firearms, and electronics used by Mr. McFarland in the distribution of narcotics in his home. The foregoing established probable cause and a continuing nexus sought between the location of the search (Mr. McFarland's home) and the evidence sought (drugs, electronics used to deal drugs, and illegal firearms).

In sum, we find all three search warrants met the required probable cause and continuing nexus requirements. Thus, the district court did not err in denying Mr. McFarland's Motion to Suppress on this basis. Mr. McFarland's third assignment of error is without merit.

## Assignment of Error Number Four: Whether the District Court Erred in Failing to Suppress All Evidence Under the "Fruit of the Poisonous Tree" Doctrine

In his fourth and final assignment of error, Mr. McFarland asserts the district "court erred in failing to suppress all evidence obtained as a result of the search warrant of Mr. McFarland's vehicle, cell phone, and residence because all the seized evidence constitutes 'fruit of the poisonous tree.'" More particularly, Mr. McFarland argues that "because the initial seizure and search of Mr. McFarland's vehicle lacked probable cause, such search was illegal; therefore, any evidence ascertained as a result of the search and subsequent evidence must be suppressed because all the evidence (gun and drugs) were obtained as a direct result of the illegal seizure and search of Mr. McFarland's vehicle." The State counters that Mr. McFarland's assignment of error is without merit because he "has failed to demonstrate any deficiencies in any of the warrants upon which the searches were based." Further, the State reiterates that "exigent circumstances existed to seize [Mr. McFarland]'s property and that property was not searched until after law enforcement obtained valid search warrants." We agree with the State.

As this Court recently delineated:

"the [fruit of the poisonous tree] doctrine serves to exclude from evidence the direct and indirect products of illegal violations of the Fourth Amendment" to the United States Constitution. Also known as "[t]he exclusionary rule," it "bars, as illegal 'fruit of the poisonous tree,' any physical and verbal evidence obtained either during or as a direct result of an unlawful invasion." Not only does "[t]he rule extend[] to . . . primary evidence obtained during or as a direct result of an illegal search or seizure," but also to "evidence later discovered and found to be a derivative of illegality." However, as this Court has further explained, "[w]hen there is no primary illegality, the 'fruit of the poisonous tree theory' does not apply." Accordingly, a trial court should not suppress evidence or statements subsequently obtained if the initial interaction with the defendant was not illegal.

*Hill*, 2025-0316, pp. 18-19, 418 So.3d at 1132 (footnote omitted) (internal citations omitted) (alterations in original). In this latter regard, as we explained previously, the exigent circumstances exception "excus[es] an otherwise unconstitutional intrusion." *Warren*, 2005-2248, p. 11, 949 So.2d at 1224-25 (citation omitted). That is, when the exigent circumstances exception applies, a warrantless seizure is not unconstitutional or illegal. Likewise, as explained by the Louisiana Fifth Circuit Court of Appeal, "evidence collected pursuant to a valid search warrant is patently not an unlawful invasion" and "evidence retrieved pursuant to a valid search warrant is not considered an illegality or fruit of the poisonous tree." *Williams*, 2020-46, p. 50, 308 So.3d at 830.

In a preceding section of this Opinion, we found there was no initial illegality in the officers' warrantless seizure of Mr. McFarland's vehicle due to the exigent circumstances and because the officers had probable cause to seize the vehicle. Then, in the prior section of this Opinion, we also found the officers had probable cause to obtain the search warrants for Mr. McFarland's vehicle and cell phone. Because there was no initial illegality, the fruit of the poisonous tree doctrine does not apply to the evidence subsequently obtained by the officers. Accordingly, the district court did not err in denying Mr. McFarland's Motion to Suppress on that basis. This assignment of error is without merit.

## DECREE

For the foregoing reasons, we hold the district court did not err in denying Mr. McFarland's Motion to Suppress. Accordingly, we affirm Mr. McFarland's convictions and sentences.

**AFFIRMED**